IN THE

# SUPREME COURT

OF

# NEW JERSEY,

## MAY TERM, 1795.

---

[298]  MOTT v. PETTIT.

1. A, under a rule of court, pays money into the hands of B, the clerk of the court, and afterwards, by permission of the court to take it out, demands a re-payment; he is entitled to the identical money deposited. If the money has been used by B, A is entitled to the value of it, at the time of the deposit made, though it may afterwards have depreciated.

2. A clerk of a court has no right to employ money deposited in his office, for his own purposes.

3. If he converts money so deposited, he becomes a wrong-doer, and is answerable for the full value received.

4. Such sum and interest, from the time of the demand, is recoverable in an action of *assumpsit*.

5. On a motion for a new trial, on the ground of misdirection, the court will not admit evidence tending to prove particular facts to be different from what they appeared at the trial.

---

On a motion for a new trial.

This cause had been tried at the last Hunterdon Assizes, before the Chief Justice, and now, on a motion for a new trial, on the ground of a misdirection in the charge of the court, his Honor reported " That this was an action of *assumpsit*, brought by Mott against Pettit, for £500, money had

344

Mott v. Pettit.

and received ; to which the defendant pleaded—1st. *Non assumpsit*. 2d. *Non assumpsit infra sex annos*. By the evidence, it appeared that Pettit, the defendant, during the years 1774 and 1775, was clerk of the Supreme Court, and received from Mott, in two separate payments, the sum of £263 2s.

Mott had paid this sum into court under a rule of court, in an action against him, at the suit of one Elizabeth Abeel on a mortgage ; and, in 1788, having paid off the mortgage, he applied to the court and obtained permission to take the moneys out of court. A general receipt was shown from Pettit for £263 2s., without specifying the particular species of money which was received. In 1778 Bowes Reed (a) was appointed to the office, and, in 1779, Pettit paid into the hands of Reed a sum of continental money on account of Mott, equal to the sum first deposited with him ; and in 1788 Mott demanded of Pettit the payment of the money which had been deposited originally in the office, which demand Pettit refused to comply with. It was further stated that, on the trial, the counsel for the defendant admitted that the deposit was originally made in specie, but that Mott had requested Pettit to exchange it for province bills, as being a more regular tender ; but there was no evidence to prove this particular fact relative to the kind of money, or the request to change it.

[299] The following is an abstract of the charge which was delivered to the jury by the Chief Justice.

The court told the jury that this action was brought for the recovery of £263 2s. deposited by James Mott in the hands of the defendant, then clerk of the Supreme Court.

That it appeared in evidence, and the fact had not been denied, that in 1774 and 1775 the sum of money in question had been so deposited.

It had likewise been admitted that, at the time this deposit

(a) On the argument, plaintiff's counsel offered to prove that Reed was appointed in 1776, as appeared by the minutes of the joint meeting, and they contended that, in this particular, the case might be amended according to the truth of the fact ; but the court declared that, on an application for a new trial on the ground of misdirection, they must take the facts as they appeared at the trial.

was made, it was either in hard money, or in money equal to specie.

That the determination of the cause, in the opinion of the court, turned in a great measure upon a single point, and that point was, whether the defendant did change the money deposited in his hands, and did pay his successor the continental money, or any other money which had been so deposited.

That this was a fact which the jury were to settle from the evidence which they had heard, and from the observations of the counsel upon it.

If the jury believed that Pettit did change the money, and did not pay to his successor the specific money which had been deposited by the plaintiff, they had a right to presume that he did before that time convert it to his own use. This the court were of opinion that he had no right to do, and that it rendered him liable to the payment of the full value of the money at the time he received it.

In other words, if Pettit had left the money such as he received it, as it was his duty to have done, the depreciation would have fallen on Mott, the plaintiff; but if Pettit changed it for other money, he may be presumed to have made use of it for his own advantage; and after using money, which he had no right to employ, he cannot be permitted to derive any advantage from the depreciation of money not deposited, and to charge the loss to the plaintiff's account.

The court believed this to be the best rule which could be adopted, and that it was the most equitable one. A clerk of a court has a plain path to walk in : he is to keep the money delivered to him. If he will not act legally, he acts at his peril, and must abide by all the consequences which shall re-[300]-sult from an abandonment of the line of his duty. Officers should never be encouraged to exercise an authority not delegated by the law. There may sometimes be hardship in enforcing a rule of law with extreme rigor ; that consideration, however, should have no weight in a case circumstanced like the present; the law should be strictly complied with. It will have a tendency to prevent officers from overstepping the

line of their duty. And as Pettit, in case he did change the money, did wrong, every presumption may be made against him; and on this principle it may be inferred that by the use of it, he received the full value of it at the time it was deposited.

If you find for the defendant, the verdict may be general; if you find for the plaintiff for the value of the money when deposited, or for any other sum, it is the opinion of the court that no interest can be calculated except from the time of the demand, which was in 1788.

The jury found a verdict in favor of the plaintiff for the sum of £373.

*Leake* and *Aa. Ogden*, for the defendant, took several exceptions, which were urged at great length and with much ingenuity.

1st. It was contended that the charge respecting interest was altogether misconceived, for that no interest was payable upon the sum in Pettit's hands, there being no contract between the parties, no undertaking to pay, no note. This rule was laid down by Lord Chief Justice Raymond, in the case of *Harris* v. *Benson*, 2 *Str.* 910, which was an action against the drawer of an inland bill after an acceptance; in which it was ruled by the court that the drawer could not be chargeable with interest. The Chief Justice there said that it had never been allowed barely for money lent without a note. *Blaney* v. *Hendrick et al.*, 3 *Wils.* 205; 2 *Bl. Rep.* 761, *S. C.*

Interest cannot be recovered in this action. The action for money had and received is an action formally adopted to the recovery of what the defendant has received, and nothing more. The plaintiff can claim no more. He waives, by adopt-[301]-ing this course of proceeding, all special damage, tort, fraud, &c., and goes only for the clear sum which he alleges had improperly come into the hands of defendant, or was illegally detained by him. This rule appears to run through

all the cases. In *Moses* v. *M'Farlan*, 2 *Burr*. 1005, 1010, Lord Mansfield says : " It is the most favorable way in which defendant can be sued.   He can be liable no further than the money which he has actually received." 1 *Bl. Rep.* 219, *S. C.* In the case of *Clark* v. *Shee and Johnson, Cowp.* 197; *Lofft.* 756, the same doctrine is held ; and in *Longchamp* v. *Kenny, Dougl.* 137, the precise sum, without interest, was all that was recovered.   The same verdict was given in *Bize* v. *Dickason et al.*, 1 *T. R.* 285.   These cases are all authorities to prove that in this kind of action the precise sum received, without interest, is all that is ever thought of, by either court or jury.   *Dutch* v. *Warren*, cited in 2 *Burr.* 1010 ; *Bull. N. P.* 140 ; 1 *T. R.* 387, are to the point that, on principle, interest is not recoverable.

It is extremely important that the proper subjects of different actions should be distinctly perceived, and their precise objects studiously kept in view.   This constitutes a part, and an important part, of a regular and scientific system ; and it is impossible to violate the rules which immemorial custom has prescribed, without impairing the symmetry of the whole edifice.   *Cowp.* 417–18 ; 1 *Str.* 634, *Reynolds* v. *Clarke ; Harker* v. *Birkbeck*, 3 *Burr.* 1556.

2d. They insisted that it was a question extremely material for the parties, whether the deposit was originally made in specie or in paper money. If the deposit was in specie, there would be some plausibility in the assertion that Pettit was a wrong-doer, but they contended that the case would wear a totally different aspect if the money originally received by him was in province bills.

The admission which was made at the trial by the counsel for the defendant, that the deposit was made in specie, should be laid altogether out of the question, unless the assertion by which it was accompanied is also received.   It was said that the plaintiff requested Pettit to change the specie into paper, [302] and that it was done accordingly.   If the whole admission is taken together, and it is extremely unfair and unjust to mutilate and separate it, the amount of it is

that, strictly speaking, the money deposited was in paper. Either the whole admission must be taken, with the explanatory circumstances attending it, or it must be altogether rejected. Independent, then, of any conclusion which may be drawn from this source, it was a fact left open for the consideration of the jury, to be determined by them according to the testimony adduced. Considering it, therefore, in this point of view, without any reference to the admission that had been made, there is abundant room for the jury to presume that the payment to Pettit was actually made in province bills.

In the first place, this presumption is to be drawn from the want of any conflicting testimony. A plaintiff is required to make out by evidence every circumstance which is material to his case. And if it was important for Mott that the deposit was made in specie, the fact should have been substantially proved on the trial, and the jury should not have been left to infer a fact which vitally affected the plaintiff's right, and which would make the defendant a wrong-doer. *Bull. N. P.* 322.

It is also to be taken into view, that Pettit's receipt on the 6th April, 1775, was in general for so much money; and after such a receipt, couched in terms so indefinite, Mott, in whose favor it operated, ought not to be permitted to dispute the species of money, and certainly not unless the fact can be verified by unexceptionable evidence.

In the third place, if any presumption at all can be drawn from the circumstances, it is in favor of the idea that the deposit was in paper money. Mott's object in bringing forward this money was to make a legal tender; if so, it is a strong circumstance in corroboration of our presumption, because province bills were the only legal tender at that time. Gold and silver were not considered a legal tender, and the practice was to exchange the latter for the former. *Wharton* v. *Morris*, 1 *Dallas* 125.

[303] From this view of the case it appears that it was at least questionable before the jury, whether gold or silver was

deposited by Pettit, and therefore it was a proper fact for their decision, if important to the plaintiff that it should have been proved.

That it was an important fact in the case will appear evident from the following considerations, which will show, in the clearest manner, that, if the original deposit was in province bills, the exchange of those bills for continental money, and the payment of that money in 1779 to Reed, his successor in office, may at least be justified by the defendant.

Pettit, by his receipt to Mott in 1755, made himself liable for lawful money of New Jersey, and he is chargeable only according to his receipt. The contract thus arising on the receipt, was discharged by paying over to his successor in office what in law was in every respect equivalent to gold or silver. Reed's receipt was in the same general words : " Received from Charles Pettit, the above sum of £269. B. Reed, Cl'k," and must fully and entirely exonerate Pettit. The question, therefore, is, whether the payment of continental money in 1779, was a good payment at the time it was made, and of this there can exist no doubt. The law was express, that continental bills should go in discharge of all contracts, as gold and silver. Pettit received this money as clerk of the Supreme Court; if he disposed of the specific money deposited, he was a debtor to the office, and had a right to discharge the debt in the currency of the day ; and Reed being his successor in the office, was the proper person to receive the money and to give an acquittance.

Again, if the jury could have found that this deposit was made in paper money, the exchange of that which was originally placed in the hands of Pettit for continental bills, might have been justified, under some circumstances ; and it was not conclusive proof of a user by defendant, as was stated to the jury in the charge of the court.

The doctrine of bailment is perfectly well settled. A person under whose charge money or any other article is placed for safe keeping, is not responsible, in every instance, for the loss of it. He is only compelled to bestow ordinary care up-

[304]-on it, and he has a right to exercise a prudent manage-ment in the use of it. *Jones on Bail.* 75, 76, 91, 2. They contended that, in fact, Pettit had exchanged these province bills for continental bills, under the act of New Jersey, passed June 8th, 1779, (*Wilson's Laws*, 80,) which required all per-sons holding province bills to bring them into the treasury, and receive continental money in lieu of them, or be foreclosed forever. This act made it not only excusable, but incumbent on Pettit, having this old money in his possession, to exchange it for continental bills ; and, in so doing, he justly considered himself as performing a duty, and benefiting Mott and the plaintiff in ejectment. The case is precisely like that of a stakeholder who holds province money at that time, and the event on which the wager was depending could not occur before the time when this species of money was to become totally useless. Would it not have been within the authority of this stakeholder, and incumbent upon him as an honest and honorable man, to change the money which he held, into that which was to retain its value, for the benefit of the fortunate wagerer ? If anything, the case of Pettit is stronger in his favor, because he held the money *qua* officer.

If a dragoon bailee of a horse which is taken sick, is offered a sound horse by government for his sick one, and accepts him, and the horse received in exchange afterwards dies, the bailee in such a case cannot be considered liable to the owner of the first horse, because he acted as a prudent man would have acted with his own property.

If Pettit had held bills of a certain emission, which, on account of the great number of counterfeits, had been called in, and new bills made to replace them ; if he made the exchange, and afterwards the bills received became of no value, he would not be responsible.

The conclusion therefore is, that the court ought to have left it as a fact for the jury to determine whether Pettit did not change the province bills (if they should determine that the deposit was made in that money) with a view to comply with the act of assembly, and to benefit the persons for whom

he held in trust; whereas, he peremptorily charged them [305] that the single fact that the original money was exchanged, was conclusive evidence that this exchange was made for his own benefit, and therefore that he was a wrong-doer.

3d. They insisted that if, in fact, the money deposited was province bills, the plaintiff had sustained no damage by the user of the money, by Pettit, even if he had converted it the day after he received it; because, if those bills had been specifically retained by Pettit, or been paid over by him to Reed, his successor, at the time of his leaving the office, they would have been of no sort of value to Mott, as they ceased to have any value in 1779, nine years previous to any demand by plaintiff. In fact, the continental money paid by Pettit to Reed, in 1779, was at that time, and is now, of more value than the province bills.

These circumstances furnish a fair and conclusive answer to the plaintiff's demand. He cannot, in this species of action, recover more than the loss which he has actually sustained. 3 *Burr.* 1352. He must prove himself injured; the amount of the damage sustained; and that it was occasioned by some fault of ours, or his cause of action fails him. If Mott sustained no loss by the user of the money, it is a matter perfectly immaterial how much Pettit gained by it.

It is one of the principles of the law of bailment, that a bailee of money, which does not perish in the using, can never be answerable for any profit which he makes of it, provided he is ready, at the time it is demanded, to make a repayment to the bailor. In this case the money returned was worth more than the money deposited, at the time it was called for. The distinction is obvious, and clearly exonerates the defendant. It is not the user which throws responsibility upon the bailee; it is the loss which arises in consequence of that user, which renders him liable. *Jones* 62. This doctrine, so consonant with common sense and common reason, is completely at variance with that laid down by the court on the trial, when they expressly stated to the jury that if the

Mott v. Pettit.

defendant used the money, and derived advantage from it, he was liable to return the whole value of it at the time it was received.

[306] 4th. It is important to refer to the acts of assembly which were passed to prevent the evils arising from the application of the rigorous principles of the common law, to debts contracted or owing during the war. Under the acts of June 18th, 1783, ( *Wilson's Laws* 337, *Paterson* 50,) and December 8th, 1784, (*Pamphlet Laws, Paterson* 59,) the whole circumstances of this case should have been submitted to the consideration of the jury; the defendant's situation, the plaintiff's loss, the causes which led to the exchange, if one actually took place, and the consequences which resulted from it to the parties. They should have been told by the court that it was their duty to find the sum which *ex equo et bono* ought to be paid. Instead of this their whole attention was directed to the exchange of the money, which as a single fact, unaccompanied by explanatory circumstances, was perfectly immaterial, and never was denied by Pettit; they were not permitted to consider whether paper or specie was originally deposited; nor whether—1st. It was not specifically paid over to Reed, in 1779, according to the terms of the receipt; nor—2d. Whether the exchange was not made for the benefit of Mott, under the act of 1779, for calling in province bills; nor—3d. Whether if the money was used, any damage or loss accrued, in consequence thereof, to the plaintiff; nor—4th. Whether, under all the circumstances of the case, and the different acts of assembly affecting the question, Mott ought to recover anything.

In a case attended by such circumstances, bearing so hard upon the plaintiff's interest, and involving in a considerable degree his character as an officer, it is but right that another opportunity should be afforded him of substantiating before a jury the justice of his case, and having it fully and thoroughly investigated. 3 *Bl. Com.* 390.

(Not having correct notes of the very able argument of

z

Mr. Frelinghuysen in reply, it was thought more advisable to omit it altogether than to give a sketch which would necessarily be extremely imperfect.)

[307] *R. Stockton* against the motion. This question has been divided by the opposite counsel, and argued—1st. As it relates to the interest. 2d. To the principal. I shall reverse this order, and endeavor, first, to show our right to recover the principal sum, and then, that our right to the interest, so far as it has been given us by the jury, results as a necessary consequence.

We have a right, on a motion of this kind, to argue not merely from the evidence which was adduced before the jury, but to avail ourselves of every conclusion from the facts proved which can be drawn after a verdict has passed upon them.

1st. Then, in point of fact, we have a right to say that the deposit was originally made in specie.

This was a fact distinctly contended for upon the trial ; it was put in issue between the parties, and if, as has been contended, it is a fact vitally affecting our case, it has been pronounced upon by the jury. The question is, were the jury warranted by the evidence in forming this determination ?

1st. On the receipt signed by Pettit it stands indifferent, and no conclusion can be drawn against us, at least from that paper. The receipt is in general for so much proclamation money, which is no doubt descriptive rather of the value than of the species ; for if it could fix the species, it could only be hard money, as Jersey money did not exist at the time of the proclamation. Considering it as an unsettled question, what are the grounds on which a determination is to be made ?

It was, on the trial, argued by the defendant that it was a deposit of hard money, and expressly stated to be so by his counsel. But it is now contended that this admission was coupled with an assertion which would render it altogether nugatory, or turn the weight of it against us ; and that it would be unfair and unjust to take part of a confession without taking the whole. It is, beyond all question, a settled

principle of law that the whole of a confession must go to a jury for their consideration; but it is an extraordinary doctrine to contend for that the jury are compelled to believe the whole or none. It is unnecessary to do more than state this doctrine to have it refuted by the common sense of every man. The jury heard the whole admission, they weighed [308] the credibility of the statement that the plaintiff desired to have the specie exchanged for paper, and their verdict shows that they found it wanting.

The jury had a full right, from the different situations of the parties with respect to proof, to presume against the defendant, because he had the custody of the money; because he on one occasion, by his own account, changed it without the approbation or knowledge of Mott; and because if he did at that time actually make this exchange, the evidence was in his own power. The rule of evidence is that every presumption is to be made against him who has it in his power, but omits or refuses to show the quality of an article in his possession. *Armory* v. *Delamitie*, 1 *Str.* 505.

Another fact is fairly to be inferred from the verdict, viz., that the conversion was made soon after the deposit was made. It was left in the office in 1774 and 1775—it was not there when defendant went out of office—and the jury were to presume that he converted it *instanter*.

That he converted it to his own use is equally inferable. The continental money was not brought forward until after the expiration of his commission; the conversion, therefore, could not have been made officially, as has been confidently asserted, and the court were accurately right in charging the jury that if he did exchange it, it was for his own benefit.

Two facts, then, are legitimately to be inferred from the evidence, or from the verdict: 1st. That the deposit was made in hard money. 2d. That defendant converted it to his own use. No ground, then, can be urged with any face of plausibility to induce the court to order a new trial.

Money of a certain and precise value is deposited in court; it is placed by the court in the charge of their clerk; the

question is, shall this officer shift the deposit, speculate upon it, take the chance of gain, and, after a lapse of several years, substitute in its stead what he pleases to call an equivalent —money with barely a nominal value? If the clerk might lawfully use money thus committed to his custody, there would be some weight in the argument for the defend-[309]-ant; but everything they have urged, everything they can urge, assumes this as an undeniable proposition.

Such a doctrine, however, though serving as a basis to the case, though implied in every argument that has been employed, has not been openly avowed, and is clearly untenable. The court will not permit such an idea to be broached. The clerk stands neither in the character of a trustee nor a bailee, and all the cases cited, therefore, are inapplicable. There is no confidence reposed in him by the parties; the money was committed to the custody of the law; and Mr. Pettit possessed the same authority over it, had the same right to employ it to his private purposes as he had to use the records of the court. As was said by the court, in their charge, the clerk has a clear path to walk in; he is to wrap up the money until it is called for by the court.

Considering him, however, in the light of a trustee or a bailee, he is not borne out by the law. If a trustee employs the money confided to him, to any purposes not within the trust, he is answerable for all the consequences, even though he acts with the honest view to benefit the trust. As to his being a bailee, by using the thing deposited, he is answerable in all events. *Jones* 94, § 4, *pl.* 5. It is not true, as has been urged, that this doctrine is applicable only to cases where the waste is occasioned by the user, and therefore does not extend to money. *Jones* 62, which was cited, does not bear him out. He may indeed use where the thing is not impaired thereby, but it is at his peril, because not within the contract.

Under this distinction, therefore, if this deposit was hard money; if Pettit acted as clerk, trustee or bailee, he was a

Mott v. Pettit.

wrong-doer, and is answerable to the full amount of the value received, and all the profits.

It has been said that a strong presumption arises to prove this deposit to have been paper, from the fact that gold and silver was not a legal tender. But there is no proof of this fact ; and we deny that there ever was a time, especially since the proclamation in the reign of Queen Anne, when gold and silver was not a lawful currency in this state. But it was nothing to the defendant in this case whether law-[310]-ful or not; it rested altogether with the person for whose use it was deposited to make the objection, and Mott might, without much apprehension, have incurred the risk of silver and gold being refused because not a legal tender.

2d. But supposing the deposit to have been made in paper, the defendant is equally responsible, because—

1st. He received the whole when it was as good, and as the defendant now urges, better than specie.

2d. He used it while he remained in office, and while, for aught that appears to the contrary, it continued of the same value.

But we are told that in 1779 he exchanged this Jersey money for continental money, under the act of assembly; that he did it officially, for the benefit of those for whose use it was held ; and that he acted correctly in so doing. A single fact, proved at the trial, and uncontradicted by one circumstance or assertion, must put an end to this ungrounded and unsupported defence. It was made out by the testimony that Mr. Pettit, at the time of this pretended exchange, was not in the office of clerk. He paid this continental money into the hands of his successor, (Reed,) above a year after he left the office, as it appeared by the evidence, and much longer, in fact.

But if he had been the officer, there was no such discretionary power confided to him ; and in making such an exchange he went beyond the pale of his duty, unless directed by the court on the application of the party interested. The assertions that the clerk was bound to make this exchange

appears to border on extravagance; no trust was reposed in him but that of safe keeping.

Again, if this substitution or exchange was made in the execution of his official duty, why is there no proof of the fact? why is so important a feature of the case left to rest altogether upon unsupported assertion and unwarranted inference? The receipt of the treasurer, the treasury books, the witness to the transaction, should have proved it. An officer venturing to change a deposit for any purpose, should come prepared to prove what the object really was. The peculiar modesty of the defendant has concealed, even from the parties immediately interested, this extraordinary and unsoli-[311]-cited act of benevolence; and this meritorious and disinterested conduct would have remained forever, as it has done for sixteen years, unknown and unsuspected, had it not been set up as a defence against this legal demand of their rights.

The great point, however, so strenuously urged by our opponents still remains—that supposing the deposits to have been in Jersey money, and used immediately by the defendant, still the plaintiff has received no injury; for if the defendant had never touched the money, it would have been of no value to Mott in 1788, at the time it was called for, and that then the continental money offered in payment was worth more.

To this there is an answer which results from the most obvious reason, as well as from a settled principle of law; that by making use of the deposit he acted illegally, and thereby shifted the responsibility from us to himself. If it had remained specifically with him, it would have been our money, and our loss; but the moment it was changed, he became our debtor for so much money received to the use of the person ultimately entitled to the deposit.

The sum found by the jury is not at all affected by the supposition that the deposit was paper money. At the time of the receipt it was of full value, and the jury were to presume an immediate conversion. The value of the money at time

it was used is, then, the only *datum* upon which they were to found their verdict. If one takes money wrongfully and converts it to his own use, he shall not be permitted years after, when called upon to replace it, to say that it is true I employed your money when of full value, but it has since been cried down and become altogether useless. A simple bailee would not be allowed to avail himself of such a defence; he is to return the money, identically as he received it, or to account for the profits.

But exception of an extraordinary and novel character have been urged against the charge of the court. To these it will be sufficient to answer, that the attention of the jury was directed to the material fact of the case, whether the money was used by the defendant, and the court said the exchange was evidence of that fact. This, in point of law, was [312] sufficient. It never before was heard of that the judges in their charge were to take up, discuss, and express an opinion upon every ground which the ingenuity or despair of counsel may have induced them to urge; they are to disincumber the case of all immaterial questions, and to place the fact upon which it hinges fully before the jury. This is all that can be required, and this has been fully complied with. As to charging the jury under the acts of assembly that they were to give what *ex equo et bono* ought to be paid, it is to be observed that these laws are entirely unconnected with the subject, and were never cited or alluded to by the counsel on the trial.

2d. The next question is, should interest be allowed? I shall show—

1st. That interest is by law due in this case.

2d. That it may be recovered in this form of action.

1st. If the defendant is considered in the light of a trustee, interest is recoverable from him as the profit of the trust estate, or money; and the jury had a right to presume, and did presume that he made this profit. *Ratcliff* v. *Graves*, 1 *Vern.* 196.

If, however, he be more correctly considered as having tor-

tiously appropriated the money of another the case is stronger. *Rapelie* v. *Emery*, 1 *Dall*. 349.

PER CUR. You need not press that point—unquestionably interest is due; confine yourself to the form of action.

*Stockton.* If interest is recoverable in any form of action, as it is admitted to be, the court will never order a new trial merely to remedy a technical error, which has been productive of no injustice to the party impeaching the verdict. 2 *Burr*. 936.

But the cases that have been cited establish no such principle as has been contended for. The amount of them is that this being an action on the case, which sounds in damages, the plaintiff is to recover what in equity he ought to receive; under this rule the plaintiff is entitled to all which *ex equo et bono* the defendant ought to pay. There may be cases, and those cited are such, where no interest is recoverable; as where an over-payment is made by mistake, the person re-[313]-ceiving it is in no fault, and he is therefore liable to refund only what he was not entitled to receive.

But where it appears that the defendant has received money to which he had no right, wilfully and wrongfully, then the law raises a contract not only to refund the numerical money received, but also to make satisfaction for the detention. This, then, is what the defendant ought in equity to pay, and it is recoverable in this form of action.

But this objection, if solid, goes to the recovery of interest in any shape, and is not confined to this form of action; for this is a case of money actually received to the use of the plaintiff, and not a mere implied trust raised by the law. In this form of action the precise fact is laid as the ground of the plaintiff's action, and in any other form of action it would not be laid. If no interest is recoverable in this form of action, it must be upon the ground that none is actually due, or else this surprising result will follow, that in consequence of stating the precise truth of his case, he can recover no inter-

est, but if he depart from it, then the law will do him justice.

This form of action, however, is technically adapted to the recovery of interest. Its object is to recover all the money actually received to our use ; and the cases that have already been cited, prove that interest was or might have been derived from the employment of this money. The money was employed, and in the absence of other testimony, the jury were right in considering the rate of interest, as affording a legal and fair criterion by which to estimate the amount of the profits.

Under these circumstances, when the charge of the court appears to be correct—when there is no doubt as to any material fact—when no surprise is pretended—nor any suggestion made that any further light can be thrown on the subject, is this a case in which the court will exercise the high discretion reposed in them, and set aside a verdict of an intelligent and impartial jury ?

PER CURIAM. Whether the defence made for Pettit at the trial was the one he could have wished, or the best his case allowed, we know not ; we must judge upon it as it ap-[314] peared to the court and jury. The plaintiff proved that in 1774 and 1775, he paid him, as clerk of this court, the sum of £263 2s. ; it does not satisfactorily appear in what description of money, but it does appear that whatever it might have been, it was at that time fully equal in value to gold or silver. In 1788 Mott made a demand of this money, and in the room of it, he is offered a bundle of continental bills, some dated in 1779, which had been delivered by Pettit to his successor, a long time after he had gone out of office. This was not the money that had been deposited—it was good for nothing. The plaintiff says, I must have that money, or you must pay me the value at the time it was received. In answer to this the defendant replies, the money you deposited was paper ; had I kept it, it would have been as bad as the continental money at the time of the demand. The plain-

tiff answers, the deposit was in hard money.    Upon this the jury were to pronounce.

Again the plaintiff says, if paper was deposited with you, it was at that time equal in value to hard money ; you used it when good, and you must account for it.    Defendant says that he cannot be compelled to answer for the mere user of money, which was not thereby deteriorated ; but the court is of opinion that he became instantly liable as a wrong-doer, and the plaintiff is entitled to the value converted.

Again the defendant says, I changed this money for your benefit.    The plaintiff replies, in the first place there is no proof of this ; and in the next place, if true, you were authorized, neither by me nor by the court, to make an exchange ; and we think with the plaintiff upon this point.

In short, the plaintiff proved the receipt of the money in 1775 ; the defendant ought to have exonerated himself by showing that the money was paper, and sunk in his hands, or that he lost it without any default ; or that in some other way he was justly and legally excused from returning it. This he has not done, and from the evidence, the verdict of the jury is right, and the charge of the judge at Nisi Prius does not appear to be erroneous.

The objection to the recovery of interest in this case, we conceive to be groundless.    In an action of *indebtitatus as-* [315]-*sumpsit* for money had and received, the plaintiff proves that the defendant converted a deposit to his own use ; it is therefore, in effect, to recover damages to the amount of defendant's liability ; and the interest is as much a part of the money received as the principal, and therefore the plaintiff has the same right to demand and receive it.

Rule discharged.